UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| MELANIE HURLEY, | Civ. No.   5:19-cv-5033 |
| Plaintiff, | |
| vs. | |
| RAPID CITY AREA SCHOOL DISTRICT; BRAD JUNGWIRTH, individually and in his official capacity as principal of South Park Elementary School; TIM MITCHELL, individually and in his official capacity as past superintendent of the Rapid City Area School District; and LORI SIMON, individually and in her official capacity as superintendent of the Rapid City Area School District. | **COMPLAINT** |
| Defendant. | |

**PARTIES**

1.     Plaintiff Melanie Hurley is resident of the state of Georgia, and at all times herein mentioned was residing in South Dakota.

2.     Defendant Rapid City Area School District (hereinafter referred to as "Defendant" and/or "RCASD") is a recipient of federal funds subject to § 504 of the Rehabilitations Act; bound by the requirements of Title II of the Americans with Disabilities Act, and a governmental entity authorized under the laws of South Dakota.

3.     Defendant Brad Jungwirth is the principal at South Park Elementary School in Rapid City, South Dakota.  He resides in South Dakota.

4.      Defendant Tim Mitchell is a former superintendent for the RCASD. He resides in Iowa.

5.      Defendant Lori Simon is the current superintendent for the RCASD.  She resides in South Dakota.

## JURISDICTION

6.      This action arises under the Rehabilitation Act of 1973, Section 504, 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.  As such, this Court has original federal question jurisdiction as the claims arise under the Constitution, laws, or treatises of the United States, pursuant to 28 U.S.C. § 1331.

7.      Jurisdiction is also conferred by 28 U.S.C. § 1343, which provides for original jurisdiction of this Court and suits authorized under 42 U.S.C. § 1983, to redress the deprivation under color of state law, statute, ordinance, regulation, custom or usage of any right, privilege or immunity secured by the Constitution of the United State or by any act of Congress providing for equal rights to citizens and all persons within the jurisdiction of the United States.

8.      Jurisdiction is also conferred on this Court under 28 U.S.C. § 1332 through diversity of citizenship and the matter in controversy exceeds $75,000, exclusive of interest and costs.

9.      Pursuant to 28 U.S.C. § 1367(a), this Court also has supplemental jurisdiction over state law claims in this complaint.

**VENUE**

10.    Venue is properly laid within the District of South Dakota pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the instant action occurred within this District and because at least one Defendant resides in this District.

**GENERAL FACTUAL ALLEGATIONS FOR MELANIE HURLEY**

11.    Plaintiff realleges paragraphs 1 through 10.

12.    Plaintiff is a highly intelligent, qualified and remarkable teacher, professor, superintendent, and advocate for young students.

13.    Plaintiff not only has her Bachelor of Science Degree in Elementary Education, but also a Masters of Education Degree in Leadership and Literacy.

14.    Plaintiff has received multiple awards in recognition of her teaching ability and advocacy for low-income students with disabilities.

15.    In fact, Plaintiff was awarded Teacher of the Year in 2006 by the RCASD.

16.    Plaintiff was employed by RCASD as a third-grade teacher during the 2015-2016 academic year.

17.    While employed as a third-grade teacher, RCASD refused to pay Plaintiff correctly according to the terms of her employment contract.

18.    Plaintiff was teaching at South Park Elementary School during this time.

19.    Plaintiff discovered that Defendants were not complying with the Individuals with Disabilities in Education Act (IDEA).

20. Defendants were refusing to test students for special education—many of whom were Native American and from low-income households.

21. Defendants failed to acknowledge requests by students' parents and doctors requesting that the students be tested for special education services.

22. As a result of Defendants' failure to test students, all students went to other schools, subsequently tested, and qualified for the Individual Education Program (IEP).

23. Plaintiff then presented testimony in front of committees for both the South Dakota House of Representatives and the South Dakota Senate in support of House Bill 1198, regarding dyslexia (hereinafter referred to "dyslexia bill").

24. The South Dakota House of Representatives passed the dyslexia bill.

25. The dyslexia bill was prepared to pass the full South Dakota Senate.

26. Defendants were opposed to the dyslexia bill.

27. A lobbyist was hired by Plaintiff's advocacy group, Decoding Dyslexia, to help with the dyslexia bill's passage in the South Dakota Legislature.

28. However, on the eve of the dyslexia bill's passage, the lobbyist quit and was hired by the South Dakota Department of Education.

4

29.    Prior to the South Dakota Senate's vote on the dyslexia bill, Defendant accidently emailed a supporter of the bill that the bill was not going to pass.

30.    The South Dakota Senate subsequently failed to pass the dyslexia bill.

31.    In the midst of advocating for her students needing testing and the dyslexia bill, Plaintiff was continually being harassed and discriminated against by Defendants.

32.    As a result, Plaintiff filed an internal grievance against Defendants on or about February 2016 for harassment, discrimination, and not servicing students with clear disabilities.

33.    In or about February 19 or 20, 2016, right after the dyslexia bill did not pass and the day before the proceeding on Plaintiff's grievance, Defendant Brad Jungwirth called Plaintiff to ascertain what she would accomplish by filing the grievance.

34.    Defendant Brad Jungwirth then stated that Plaintiff's employment contract would not be renewed.

35.    When Plaintiff asked the reasoning behind her contract non-renewal, Defendant Brad Jungwirth stated that it was because she takes everything legally and that the staff was afraid of her because she was too smart.

36.    On or about April 2016, Plaintiff signed a settlement agreement with Defendants.

37.    The settlement agreement became effective on or about April 12, 2016.

38.    The settlement agreement stated that Defendant Brad Jungwirth, current principal at South Park Elementary, would highly recommend Plaintiff to others.

39.    Nowhere in the settlement agreement was there any indication of wrongdoing by Plaintiff.

40.    The settlement agreement did not state Plaintiff would be prevented from working elsewhere in the school district or state.

41.    Instead, Defendants lead people to believe that Plaintiff did something wrong and was fired.

42.    After Plaintiff signed the settlement agreement, the Special Education Director, Literacy Director, and Superintendent of RCASD resigned.

43.    The School Board was not informed that the students' needs were not being met.

44.    The School Board was not informed that Defendants were not following IDEA.

45.    Plaintiff then started to search for new teaching positions within RCASD and the surrounding area.

46.    Plaintiff applied for approximately 250 open positions—all being in and outside the education field.

47.    Although being a highly skilled teacher, Plaintiff did not receive one interview for a teaching position in or outside the school district.

6

48.    Plaintiff attempted to contact the new superintendent of RCASD, Defendant Lori Simon, to discuss her concern that she had applied for multiple positions in the district and was not receiving a single interview.

49.    Plaintiff received a certified letter stating that she could not contact or communicate with anyone in the district.

50.    Plaintiff then filed a complaint with the Equal Employment Opportunity Commission (EEOC) on April 12, 2017.

51.    Plaintiff also filed a complaint for retaliation with the Office for Civil Rights (OCR).

52.    OCR received Plaintiffs complaint August 23, 2016.

53.    On October 16, 2017, OCR notified Plaintiff that it had jurisdiction to investigate whether RCASD retaliated against Plaintiff after she filed an internal discrimination complaint by providing negative information about Plaintiff to prospective employers and refusing to rehire her for other positions in the district.

54.    Defendants are aware of OCR's investigation.

55.    Defendants and Plaintiff attempted to mediate Plaintiff's OCR complaint in or about August 2018 to no avail.

56.    OCR has an on-going investigation into Plaintiff's complaints against Defendants.

57.    In addition to the above-mentioned acts, as a further direct and proximate cause of Plaintiff's complaint to the OCR, Plaintiff was subjected to

adverse employment actions, which resulted in, but not limited to, the following:

    a. Plaintiff did not receive an interview when she applied for a position at South Middle School where she was offered the same position the previous year.

    b. Plaintiff applied for multiple positions at Wilson Elementary School but was notified by the principal that Plaintiff's application never got to the principal.

    c. Plaintiff applied at Douglas School District, but when she called to determine the reason for not getting an interview, Plaintiff was informed that her application and name was removed from the system.

    d. The same circumstances that occurred in the Douglas School District also occurred when Plaintiff applied to both the Sturgis and Custer Elementary Schools.

    e. Plaintiff applied at Western Dakota Technical Institute and National American University, and while all were excited and stated they were going to hire Plaintiff during the interview, Plaintiff was informed later that she was not going to be hired.

    f. Plaintiff applied at every school district in the Black Hills region, but she did not receive an interview.

58.    As a result of Defendants' retaliation, Plaintiff had to take minimum-wage positions.

59. As a result of Defendants' retaliation, Plaintiff was forced to sell her home and all of her furniture.

60. As a result of Defendants' retaliation, Plaintiff was forced to deplete her retirement savings.

61. As a result of Defendants' retaliation, Plaintiff was forced to move to another state to find employment.

62. Defendants continuously refused to complete Plaintiff's verification of employment form, which was required for Plaintiff to obtain a teaching license in another state.

63. As a result, Plaintiff was forced to work at an inner-city school for less pay where a teaching license was not required.

64. After hiring an attorney, Plaintiff was eventually able to convince Defendants to fill out her verification of employment form.

65. However, Defendants again did not complete the form correctly in failing to verify Plaintiff's years of service so she could be compensated correctly.

66. Defendants stated to Plaintiff that the reason Plaintiff's verification of employment form was not completed properly was due to the rules by North Central Accreditation; however, when Plaintiff contacted North Central Accreditation, this was not the case.

67. Defendants have continuously and constantly retaliated against Plaintiff by preventing her from seeking meaningful employment in education in multiple jurisdictions.

9

68.    Defendants have provided negative information about Plaintiff to prospective employers.

69.    Defendants have refused to hire Plaintiff for other positions that she is highly qualified for.

70.    As a direct and proximate result of the Defendants retaliatory acts, of which Defendants were aware, permitted, and ratified, Plaintiff has suffered and experienced severe hardship in finding employment and her everyday life.

**COUNT ONE**
**Section 504 of Rehabilitation Act Violation**

71.    Plaintiff adopts by reference all prior and subsequent paragraphs of this complaint.

72.    At all times herein mentioned, Defendant RCASD was and is a recipient of federal funds subject to § 504 of the Rehabilitation Act.

73.    Plaintiff's students at South Park Elementary, and other students going to school under the control of Defendant RCASD, suffered from disabilities and were or could be the beneficiaries of the federal funding subject to § 504 of the Rehabilitation Act, and Plaintiff was within the zone of interest of the Act's requirements for the benefit of such disabled students.

74.    As set forth more specifically above, Plaintiff made an internal grievance that disabled students within Defendants' control were being discriminated against and being deprived of a free appropriate public education.

75.    In response, Defendants intentionally retaliated against Plaintiff as more specifically set forth above.

76.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered, and continues to suffer, severe mental, emotional and physical distress, loss of earnings and benefits, and is entitled to and demands damages against Defendants, jointly and severally, in an amount of damages to be determined at trial according to proof.

77.    Plaintiff has retained the services of one or more attorneys in this action, and if she prevails is entitled to her reasonable attorneys' fees pursuant to 29 U.S.C. § 794a(b).

## COUNT TWO
### Title II of the Americans with Disabilities Act Violation

78.    Plaintiff adopts by reference all prior and subsequent paragraphs of this complaint.

79.    Defendant RCASD is a public entity as defined within Title II of the Americans with Disabilities Act of 1990, § 201, 42 U.S.C. § 12131, and subject to the provisions of Title II of the Americans with Disabilities Act.

80.    The students at South Park Elementary and other students Plaintiff advocated on behalf of within the control of Defendant RCASD were or could be qualified individuals with a disability as defined within Title II of the Americans with Disabilities Act of 1990, § 201, 42 U.S.C. § 12131, and subject to the provisions of Title II of the Americans with Disabilities Act.

81.    The acts and/or omissions of Defendant RCASD reported by Plaintiff to them by her filling an internal grievance fall within the definition of discrimination as set forth in 42 U.S.C. § 12132 in that said students by and through the acts and/or omissions of Defendant RCASD were excluded from

participation in and denied benefit of the series, programs, and activities based upon their disabilities, and subjected to discrimination by Defendant.

82.    As a direct and proximate cause of Plaintiff's complaints to RCASD and OCR, Defendant RCASD violated 42 U.S.C. § 12203(a), (b) by an intentional and systematic pattern of retaliatory acts including coercion, intimidation, threats, and interference against Plaintiff as more fully set forth above.

83.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered, and continues to suffer, severe mental, emotional, and physical distress, loss of earnings and benefits, and is entitled to and demands damages against defendants, jointly and severally, in an amount of damages to be determined at trial according to proof.

84.    Plaintiff has retained the services of one or more attorneys in this action, and if she prevails, Plaintiff is entitled to her reasonable attorneys' fees, including litigation expenses and costs, pursuant to 42 U.S.C. § 12205.

**COUNT THREE**
**42 U.S.C. § 1983 First Amendment Retaliation Violation**

85.    Plaintiff adopts by reference all prior and subsequent paragraphs of this complaint.

86.    Defendants were acting in their official and individual capacity in violating Plaintiff's fundamental constitutional rights under the First and Fourteenth Amendments of the United States Constitution, which are protected by 42 U.S.C. § 1983.

12

87.    At all times relevant to this complaint, Plaintiff was engaged in constitutionally protected speech in advocating for students with disabilities, advocating for the passage of the dyslexia bill, filing an internal grievance, filing an EEOC complaint, and filing an OCR complaint.

88.    As discussed more specifically above, Plaintiff was engaged in constitutionally protected speech as a private citizen.

89.    Plaintiff was speaking on a matter of public concern.

90.    Defendants took adverse employment actions against Plaintiff for exercising her constitutional rights.

91.    Plaintiff's exercise of her constitutional rights guaranteed by the First and Fourteenth Amendments to the United States Constitution was a substantial or motivating factor in Defendants' adverse employment actions against Plaintiff as set forth more specifically above.

92.    Some or all Defendants were acting under the color of the authority of state law or custom.

93.    As a direct and proximate cause of Defendants' actions, Plaintiff has suffered grievance, permanent injury, and infliction of mental and physical pain and suffering, for which Plaintiff is entitled to monetary relief.

94.    Defendants' actions were deliberate, reckless, wanton, and/or cruel, justifying an award of punitive damages.

95.    Plaintiff has retained the services of one or more attorneys in this action, and if she prevails is entitled to her reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT FOUR
### Breach of Contract

96.  Plaintiff adopts by reference all prior and subsequent paragraphs of this complaint.

97.  Defendants had an enforceable contract with Plaintiff, which was executed as a settlement agreement, as a result of Plaintiff filing an internal grievance.

98.  Defendants were required to negotiate the settlement agreement fairly and in good faith.

99.  Defendants breached their obligations under the settlement agreement by not highly recommending Plaintiff for other positions inside and outside Defendants' district as set forth more specifically above.

100.  As a direct and proximate result of Defendants' breach, Plaintiff has suffered, and continues to suffer, severe mental, emotional, and physical distress, loss of earnings and benefits, and is entitled to and demands damages against defendants, jointly and severally, in an amount of damages to be determined at trial according to proof.

## COUNT FIVE
### Fraud and Deceit

101.  Plaintiff adopts by reference all prior and subsequent paragraphs of this complaint.

102.  Defendants willfully deceived Plaintiff, through representations they or it knew to be untrue, or recklessly made, with the intend to induce Plaintiff to alter her position to Plaintiff's injury or risk.

103.   Plaintiff hereby did rely on, and act upon, Defendants' misrepresentations to her detriment.

104.   Defendants made representations that Plaintiff would be given a letter of recommendation highly recommending Plaintiff.

105.   Defendants made representations in the settlement agreement that led Plaintiff to believe that the facts and circumstances surrounding the Plaintiff's internal grievance would be kept confidential.

106.   Defendants made representations that a qualified substitute teacher would be hired to fill Plaintiff's vacancy after agreeing to resign from her teaching position.

107.   Defendants made representations that they or it would not lead others to believe that Plaintiff was fired.

108.   Defendants made representation that Plaintiff was not admitting fault by signing the settlement agreement and resigning.

109.   Defendants' misrepresentations induced Plaintiff to forego challenging her termination or loss of employment to her detriment

110.   Defendants' misrepresentations induced Plaintiff to sign the settlement agreement and resign from her teaching position.

111.   As a direct and proximate result of Defendants' fraud and deceit, Plaintiff has suffered, and continues to suffer, severe mental, emotional, and physical distress, loss of earnings and benefits, and is entitled to and demands damages against defendants, jointly and severally, in an amount of damages to be determined at trial according to proof.

15

WHEREFORE, Plaintiff seeks the following relief:

1.      For compensatory damages according to proof;

2.      For costs of suit, including reasonable attorneys' fees;

3.      For punitive damages;

4.      For each other such and further relief as the Court may deem just and proper.

Dated this _____ day of April, 2019.

> BEARDSLEY, JENSEN & LEE,
> Prof. L.L.C.
>
> By: _____
> Steven C. Beardsley
> Elliot J. Bloom
> 4200 Beach Drive, Suite 3
> P.O. Box 9579
> Rapid City, SD  57709
> Telephone:  (605) 721-2800
> Facsimile:  (605) 721-2801
> Email: sbeards@blackhillslaw.com
>        ebloom@blackhillslaw.com
> *Attorneys for Plaintiff*

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Melanie Hurley

**DEFENDANTS**
RAPID CITY AREA SCHOOL DISTRICT et al.

**(b)** County of Residence of First Listed Plaintiff    Fulton
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Pennington
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Beardsley Jensen & Lee
P.O. Box 9579
Rapid City, SD 57709

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| | | | | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File | |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C § 1983
Brief description of cause:
Retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE    Viken    DOCKET NUMBER

DATE    4/9/19

SIGNATURE OF ATTORNEY OF RECORD    *[signature]* Beardsley

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE